**FILED**
**December 13, 2017**
KAREN MITCHELL
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 16-10881

United States Court of Appeals
Fifth Circuit
**FILED**
September 6, 2017
Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

    Plaintiff - Appellee

v.

ARNULFO RODRIGUEZ,

    Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:16-CR-29

Before HIGGINBOTHAM, GRAVES, and HIGGINSON, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:[*]

    Arnulfo Rodriguez pleaded guilty to conspiracy to possess with intent to distribute cocaine—that he committed that crime and the facts of the offense are not in dispute. Instead our question today involves the application of a sentencing enhancement, recommended in the Presentence Investigation Report ("PSR"), for maintaining a premises for the purpose of manufacturing or distributing a controlled substance. Our review of the record reveals, at best,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

weak evidence that Rodriguez was using his family home as a "stash house"—the evil the disputed enhancement was enacted to combat. However, because the district court stated clearly that the sentence was one it would otherwise impose, we conclude any error was harmless.

I.

In November of 2015, Rodriguez's three co-conspirators attempted to sell approximately 2.2 kilograms of cocaine to an undercover Forth Worth police officer. After being arrested, the three fingered Rodriguez as the source of the drugs. A federal warrant issued, and Rodriguez was taken into custody on January 28, 2016. Post-arrest, Rodriguez told officers that he had stored the drugs at his home—for which he was to be paid $1,000—and that he kept two handguns and a small quantity of cocaine for personal use at his residence, consenting to a search of the premises.

Officers transported Rodriguez to his home, where he led them to a closet containing a small baggie of cocaine and a handgun. A further search revealed $25,500 in cash, deemed drug proceeds. Rodriguez stated that the cash was intended to pay for one kilogram of cocaine, and that over the previous six years he had obtained approximately 30 kilograms from the same source.

At sentencing, the PSR recommended a base offense level of 26 for possession with intent to distribute of at least 2 kilograms but less than 3.5 kilograms of cocaine, a 2 level enhancement because the offense involved firearms, a 2 level enhancement because "the defendant stored and maintained a premises for the purpose of distributing a controlled substance," and a 3 level reduction for acceptance of responsibility, for a total offense level of 27. The United States did not object to the PSR; Rodriguez initially filed ten objections. However, after the PSR addendum suggested that Rodriguez's objections could be construed as not accepting responsibility for his offense, Rodriguez

withdrew "all his original *fact-based* objections to the PSR" while reserving "the right to argue, on a legal basis only," against the enhancement for maintaining a premises for drug distribution.

At the sentencing hearing, Rodriguez argued, as he does on appeal, that the facts in the PSR are insufficient as a matter of law to support the 2 level enhancement for maintaining a premises for the purposes of distributing a controlled substance. The trial court overruled that objection. The court discussed letters Rodriguez submitted from his wife, his mother, and others, and how it had considered all of them in reaching its decision. Rodriguez's mother spoke at sentencing, asking the court for mercy. Rodriguez himself addressed the court, apologizing for his crime and expressing remorse. Based on the total offense level of 27, the court calculated a sentencing range of 70 to 87 months.  The court "stat[ed] the sentence [was] determined pursuant to Title 18 U.S.C. § 3553 treating the Sentencing Guidelines as advisory only" and "arriv[ed] at a reasonable sentence" of 77 months in prison, no fine, no civil forfeiture, a mandatory special assessment of $100, and supervised release for 3 years following release from prison. Rodriguez objected to the sentence on the basis of its reasonableness, to which the court responded:

> Very good. I will overrule that objection. I've considered the guidelines. I believe I have properly calculated the guidelines. I have determined this level of sentencing after consulting with those guidelines and then considering the 3553 factors. In particular, I have considered the quantity of drugs involved in this case as well as the cash found as well as the other facts involved in the PSR.
>
> I've compared those with what I consider to be very thoughtful letters from the defendant's wife and mother and then what was a -- as I mentioned, a well-articulated, expressed letter from his son. In balancing those facts with the 3553(a) factors, I believe this is the appropriate sentence in that it is sufficient, but not greater than necessary, to comply with the statutory purposes of

sentencing and even if I am wrong as to my calculations of the Sentencing Guidelines this is the sentence I otherwise would impose.

This appeal followed.

## II.

Rodriguez preserved this issue for review by contemporaneously objecting to the application of the enhancement, and thus our review of the "district court's application of § 2D1.1(b)(12) is a factual finding reviewed for clear error."[1] "There is no clear error if the district court's finding is plausible in light of the record as a whole."[2] Additionally, even where we find an error in calculating a guidelines range:

> We will not vacate and remand for resentencing . . . if the guidelines calculation error is harmless—that is the error "did not affect the district court's selection of the sentence imposed." Even if a court did not consider the correct range, an error in the guidelines calculation can still be considered harmless if the proponent of the sentence "convincingly demonstrates both (1) that the district court would have imposed the same sentence had it not made the error, and (2) that it would have done so for the same reasons it gave at the prior sentencing."[3]

## III.

Rodriguez argues that the district court erred in applying the Section 2D1.1(B)(12) enhancement because the undisputed facts in the record are insufficient as a matter of law to support its application. The language of the enhancement reads: "If the defendant maintained a premises for the purpose

---

[1] *United States v. Haines*, 803 F.3d 713, 744 (5th Cir. 2015) (citing *United States v. Barragan-Malfabon*, 537 F. App'x 483, 484-85 (5th Cir. 2013) (per curiam); *United States v. Chagoya*, 510 F. App'x 327, 328 (5th Cir. 2013) (per curiam)); *see also United States v. Guzman-Reyes*, 853 F.3d 260, 263 (5th Cir. 2017).

[2] *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008) (quoting *United States v. Juarez Duarte*, 513 F.3d 204, 208 (5th Cir. 2008) (per curiam)).

[3] *United States v. Richardson*, 676 F.3d 491, 511 (5th Cir. 2012) (citations omitted).

of manufacturing or distributing a controlled substance, increase by 2 levels."[4] Comment 17 to the guideline explains:

> Subsection (b)(12) applies to a defendant who knowingly maintains a premises (i.e., a building, room, or enclosure) for the purpose of manufacturing or distributing a controlled substance, including storage of a controlled substance for the purpose of distribution.
>
> . . .
>
> Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes.[5]

We have observed that this enhancement is based on 21 U.S.C. § 856, the so called "stash house" statute.[6] As the colloquial name implies, § 856 and Section 2D1.1(b)(12) do not target the homes of casual users of illicit substances, but rather facilities where a primary or principal purpose is the manufacture and distribution of drugs.[7]

In *Benitez*, we held that the Section 2D1.1(b)(12) enhancement was appropriate where the defendant received drug deliveries at the apartment and where physical evidence found at the apartment included an air breathing

---

[4] USSG § 2D1.1(b)(12) (2015).
[5] USSG § 2D1.1(b)(12), comment 17.
[6] *Guzman-Reyes*, 853 F.3d at 264; *see also United States v. Miller*, 698 F.3d 699, 705 (8th Cir. 2012).
[7] *See United States v. Roberts*, 913 F.2d 211, 219-20 (5th Cir. 1990) (holding that the evidence was sufficient to support a conviction under § 856 where premises contained "two white envelopes containing thirty-two packs of crack cocaine, equipment required for the manufacture and packaging of crack cocaine, forty-one white envelopes containing particles of crack cocaine, and crack cocaine stored in a laundry bag in the bathroom.").

mask, a cutting agent, a metal strainer, and drugs themselves.[8] In *Carrillo*, an unpublished opinion decided earlier this year, we upheld the application of Section 2D1.1(b)(12) based on "the large quantity of methamphetamine stored in [the defendant's] garage, as well as the over $12,000 in drug proceeds also stored there and various other containers with methamphetamine residue. The PSR further contained evidence suggesting that, in addition to the garage, [the defendant] also used his former residence as a premises for drug distribution and likely for storage, and he conducted drug transactions in the parking lot of that residence on multiple occasions."[9] As these decisions demonstrate, the evidentiary bar for "primary or principal use" has not been set high.

In fact, the parties have not directed us to, and we have not found, a decision by a United States Court of Appeals reversing the application of Section 2D1.1(b)(12). But that does not mean the enhancement is automatic any time a home or other dwelling under the control of the defendant is implicated in a drug crime—the enhancement does not apply where drug distribution is a mere "incidental or collateral use[] for the premises."[10] Here, the United States argues that the district court could plausibly conclude that drug distribution was a primary use of Rodriguez's residence based on: (1) the admission that 2.2 kilograms of cocaine, worth approximately $60,000, was stored at the home at some point; (2) the baggie of cocaine in the closet; (3) the firearm in the closet; (4) the drug proceeds found at the home; and (5) the PSR's undisputed finding that Rodriguez was a repeat drug dealer who his friends turned to for large amounts of cocaine. Rodriguez argues the evidence does not

---

[8] *United States v. Benitez*, 809 F.3d 243, 250 (5th Cir. 2015).
[9] *United States v. Carrillo*, No. 16-10885, 2017 WL 2126348, at *1 (5th Cir. May 15, 2017).
[10] USSG § 2D1.1(b)(12), comment 17.

support more than a one-time use of the premises for storing cocaine intended for distribution.

This evidence presents a close case as to whether the district court committed clear error in determining that the Section 2D1.1(b)(12) enhancement was warranted. The evidence in the PSR only establishes that drugs intended for distribution were present in the Rodriguez home once—when the 2.2 kilograms that served as the basis for his co-conspirators' arrest were briefly stored there. The fact that Rodriguez was a repeat drug dealer who kept large quantities of cash and a firearm in his home makes it more probable that he had previously stored drugs on site, but we are skeptical those facts are sufficient—even taken with the incident that led to this conviction—to support such an inference. Ultimately, however, we need not further pursue the matter here, because we conclude that any error in applying the enhancement was harmless.

IV.

Rodriguez argues that, without the 2 level enhancement, the total offense level would have been 25, resulting in a Guidelines range of 57-71 months instead of the 70-87 months dictated by the level 27 range the district court used. Assuming a middle of the Guidelines sentence, as he received from the district court under the level 27 Guidelines range, Rodriguez urges that he would have expected a sentence of approximately 64 months, a net difference of 13 months.[11] This, Rodriguez argues, shows that the district court's error in applying the Section 2D1.1(b)(12) enhancement was not harmless.

---

[11] Rodriguez also cites to *Gall* for the proposition that re-sentencing is required because "the Guidelines should be the starting point and the initial benchmark." The *Gall* Court goes on to say that "The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Gall v. United States*,

A sentence is harmless if the Government "convincingly demonstrates both (1) that the district court would have imposed the same sentence had it not made the error, and (2) that it would have done so for the same reasons it gave at the prior sentencing."[12] In evaluating whether the district court would impose the same sentence regardless of the guidelines error, "[w]e take the district court at its clear and plain word."[13]

Here, in imposing the sentence, the district court stated:

> I've considered the guidelines. I believe I have properly calculated the guidelines. I have determined this level of sentencing after consulting with those guidelines and then considering the 3553 factors. In particular, I have considered the quantity of drugs involved in this case as well as the cash found as well as the other facts involved in the PSR . . . . [E]ven if I am wrong as to my calculations of the Sentencing Guidelines this is the sentence I otherwise would impose.

We have held that similar statements by a court during sentencing indicate any error from an improper Guidelines range calculation is harmless. In *Castro-Alfonso*, the district court stated that:

> In imposing [the 46–month] sentence the Court has considered all the 3553(a) factors. The Court believes that its ruling on the objection is correct. But if the Court is in error, the Court, nonetheless, would impose the same sentence noting that it's reflected in the transcript itself, the offense was one that involved burglary of a dwelling. *So the Court would impose the same sentence even if it is in error as to the enhancement here.*[14]

---

552 U.S. 38, 49 (2007). As discussed *supra* and *infra*, the district court here stated that it had considered the 3553(a) factors in reaching its decision.

[12] *United States v. Ibarra-Luna*, 628 F.3d 712, 714 (5th Cir. 2010); *accord United States v. Sanchez*, 850 F.3d 767, 769 (5th Cir 2017) ("Even when a district court does not consider the correct guidelines range, an error is harmless if the district court would have imposed the same sentence for the same reasons, regardless of an erroneous Guidelines calculation.") (citing *Ibarra-Luna*, 628 F.3d at 714).

[13] *United States v. Castro-Alfonso*, 841 F.3d 292, 298 (5th Cir. 2016).

[14] *Id.* (emphasis in original).

Because "[t]he district judge was firm, plain, and clear in expressing the court's reasoning and we take him at his word," we held "that to the extent that error may have occurred, it was harmless."[15] In *Sanchez*, "the district court stated 'to the extent that I erred in application of the enhancement of plus six, the sentence would still be the same.'"[16] Assuming arguendo that the district court erred, we affirmed, holding that "[t]he district court made it abundantly clear that it would have imposed this sentence, regardless of whether it improperly calculated the appropriate Guidelines range by including the six-level enhancement."[17] And in *Richardson*, "[t]he district court stated that even if its calculation under the Guidelines was incorrect, it would still impose the same sentence,"[18] which we held indicated that "any error in calculating the total offense level was harmless."[19]

Here, the district court, treating the sentencing guidelines as advisory only, stated that the facts of the case before it—in particular the quantity of drugs involved—required a sentence of 77 months, "the appropriate sentence in that it is sufficient, but not greater than necessary, to comply with the statutory purposes of sentencing." In reaching that sentence, the district court considered letters from Rodriguez's family, heard testimony from Rodriguez's mother, and heard Rodriguez himself apologize for his conduct. While we are skeptical that the Section 2D1.1(b)(12) enhancement was appropriate based on the record before us, we take the district court at its plain word—any error in applying the enhancement was harmless.

****

AFFIRMED.

---

[15] *Id.* at 298-99.
[16] *Sanchez*, 850 F.3d at 769.
[17] *Id.* at 770.
[18] *United States v. Richardson*, 713 F.3d 232, 234 (5th Cir. 2013).
[19] *Id.* at 237.

JAMES E. GRAVES, JR., Circuit Judge, dissenting:

Application of the Section 2D1.1(b)(12) enhancement in this case was error. As the majority aptly states, "the record reveals, at best, weak evidence that Rodriguez was using his family home as a 'stash house.'" And even though the majority expresses skepticism that the enhancement was appropriate, it does not state that it was not. But as the majority readily admits, the enhancement is not automatic every time a defendant's home is implicated in a drug crime. It does not apply where drug distribution is merely an "incidental or collateral" use[] for the premises. U.S.S.G. § 2D1.1(b)(12) cmt. 17. That is all the evidence here establishes. The PSR establishes that drugs intended for distribution were present in the Rodriguez home on a single occasion.

The Government asks us to infer that Rodriguez used his home "primar[ily] or principal[ly]" to store drugs because he was "a repeat drug dealer" who was found with a large amount of cash and a firearm in his home. The Government's label of "repeat drug dealer" is not based on Rodriguez's criminal history. In fact, the PSR indicates the "absence of any criminal convictions," no arrests, no pending charges, nor any "other criminal conduct." But even if Rodriguez had a criminal history, without additional evidence that Rodriguez stored drugs at his home on other occasions, the inference that he used his home primarily to store drugs is purely speculative. The addition of years of incarceration cannot be based on mere speculation. In my view, the court clearly erred by imposing the enhancement without sufficient evidence to support it.

I cannot agree with the majority that the error was harmless. It is the Government's "heavy burden" to prove harmlessness. *United States v. Ibarra-Luna*, 628 F.3d 712, 717 (5th Cir. 2010). The Government carries this burden

only if it "convincingly demonstrates both (1) that the district court would have imposed the same sentence had it not made the error, and (2) that it would have done so for the same reasons it gave at the prior sentencing." *Id.* at 714; *accord United States v. Richardson*, 676 F.3d 491, 511 (5th Cir. 2012). In other words, the Government "must show that the . . . sentence the district court imposed was not influenced in any way by the erroneous Guidelines calculation." *Ibarra-Luna*, 628 F.3d at 719.

A district court's incantation that 'I would have applied the same sentence anyway' does not satisfy this burden if the record does not support that statement. *United States v. Martinez-Romero*, 817 F.3d 917, 925–26 (5th Cir. 2016); *United States v. Cardenas*, 598 F. App'x 264, 270 (5th Cir. 2015); *United States v. Morales-Sanchez*, 609 F.3d 637, 641 (5th Cir. 2010). Here, the record contains no evidence that the district court would have imposed the same sentence, for the same reasons, had it not erred.

Significantly, Rodriguez's 77 month sentence represents an upward departure from the correctly calculated Guidelines range. Had the district court sustained his objection to the enhancement, Rodriguez's Guidelines range would have been 57 to 71 months. To support a 77-month sentence, the district court would have been required to state in open court its "specific reason for the imposition of a sentence different from [the Guideline range]." 18 U.S.C. § 3553(c); *see also Ibarra-Luna*, 628 F.3d at 717 (a court must "clearly articulate" its reasons for departing from the Guidelines, including "why the range would not serve the goals listed in [18 U.S.C.] Section 3553(a)"). The district court's reasons "must also be stated with specificity in [the] statement of reasons form" accompanying judgment. § 3553(c). Neither of these requirements were satisfied. This is reason enough to vacate and remand.

11

Further, looking at what the district court *did* say leads to the inescapable conclusion that its sentence was tethered to the incorrect Guidelines range. At sentencing, the district court stated its reasons for imposing a sentence in the middle of the Guidelines range it designated: 70 to 87 months. The court stated, "I have determined this level of sentencing after consulting with those guidelines and then considering the 3553 factors. In particular, I have considered the quantity of drugs involved in this case as well as the cash found as well as the other facts involved in the PSR." It then continued,

> I've compared those facts with what I consider to be very thoughtful letters from the defendant's wife and mother and . . . a well-articulated, expressed letter from his son. In balancing those facts with the 3553(a) factors, I believe this is the appropriate sentence in that it is sufficient, but not greater than necessary, to comply with the statutory purposes of sentencing.

These statements neither explain nor justify an above-Guidelines sentence under the correctly calculated range of 57 to 71 months. Simply put, "there is no explanation for the sentence . . . that is not dependent on the erroneous" Guidelines range. *Cardenas*, 598 F. App'x at 270; *see also Martinez-Romero*, 817 F.3d at 925–26; *Morales-Sanchez*, 609 F.3d at 642.

The Government has not met its burden of convincingly demonstrating harmless error. Consequently, we are required to vacate Rodriguez's sentence and remand for resentencing. Because we do not, I respectfully dissent.